IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE | § | |
| COMPLAINT OF MAERSK | § | |
| TANKERS AS, AS OWNER AND | § | |
| OPERATOR OF THE M/T CARLA | § | C. A. NO. 3:15–cv–00106 |
| MAERSK FOR EXONERATION | § | ADMIRALTY |
| FROM OR LIMITATION OF | § | |
| LIABILITY | § | |

## *LPA'S ORIGINAL CLAIM*

TO THE HONORABLE GEORGE C. HANKS, JR.:

Pursuant to Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, Respondent and Claimant, LUKOIL Pan Americas, LLC ("LPA"), respectfully submits this Original Claim against Maersk Tankers AS ("Maersk") and, for causes of action, respectfully will prove by a preponderance of the credible evidence:

1. LPA seeks to recover all monetary damages arising from the partial loss to its cargo of Methyl Tertiary Butyl Ether ("MTBE" or the "cargo") carried aboard the M/T CARLA MAERSK, beginning on March 9, 2015 when that vessel collided with the M/V CONTI PERIDOT in the Houston Ship Channel.

2. LPA reasserts every allegation set forth in its Original Answer filed herein [Dkt. 42], as if fully restated here.

3.     The Court has original admiralty jurisdiction of this action under 28 U.S.C. § 1333 and this claim for relief is an admiralty and maritime claim as understood in Rule 9(h) of the Federal Rules of Civil Procedure.

4.     Venue is proper under Rule F(9) of the Supplemental Rules for Certain Admiralty and Maritime Claims and 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

5.     LPA is a Delaware Limited Liability Company with its principal place of business in New York, New York.

6.     On information and belief, at all times material, Maersk owned, managed and/or operated the M/T CARLA MAERSK as a common and/or private carrier of goods by water for hire at and between various ports, including the Port of Houston, Texas.  Maersk is a foreign entity not authorized to do business in Texas but, at all times material, did business in Texas by carrying cargo aboard vessels to and from Texas, operating and/or managing vessels in Texas navigational waters, entering into charter parties, bills of lading and/or other contracts of carriage in Texas, entering into charter parties, bills of lading and/or other contracts of carriage to be performed wholly or partly in Texas, and/or by committing a tort in Texas, each of which constitutes doing business in Texas in accordance with §17.042 of the Texas Civil Practice & Remedies Code.  Maersk is a non–resident as that term is used in Subchapter C of Chapter 17 of the Texas Civil Practice & Remedies Code but has not designated or maintained a resident agent in Texas. Alternatively, although Maersk

may not be subject to the jurisdiction of the courts of general jurisdiction of Texas or any other state, LPA's claim arises under federal law and, on information and belief, Maersk has sufficient national minimum contacts with the United States as a whole. The exercise of personal jurisdiction over Maersk is consistent with the Constitutions and other laws of the United States and Texas. Accordingly, serving Maersk with a summons is effective to establish personal jurisdiction over it. Maersk has appeared in this action and can be served by its attorney of record under Rule 5(b)(1) of the Federal Rules of Civil Procedure.

7.  On or about March 9, 2015, LPA tendered in good order and condition to Maersk or Maersk Tankers Singapore Pte. Ltd. at Houston the equivalent quantity at 60 degrees Fahrenheit of 216,049.41 barrels of LPA's cargo of MTBE, which is a liquid gasoline additive. Before that date, Maersk or Maersk Tankers Singapore Pte. Ltd. had agreed safely to receive, handle, load, stow, secure, carry, discharge and deliver at one or more safe ports in Venezuela the cargo in the same good order and condition as when received, in consideration of paid freight charges. On or about March 9, 2015, Maersk, Maersk Tankers Singapore Pte. Ltd. and/or an authorized agent of either or both acknowledged receipt of the cargo aboard the M/T CARLA MAERSK in good order and condition and, accordingly therewith, issued duplicate originals and a copy of Bill of Lading No. FMC 020396F, free of exceptions or other notations for loss or damage.

8. Thereafter, at or about 12:31 p.m. CDT on March 9, 2015 and while both vessels were navigating, the M/T CARLA MAERSK collided with the M/V CONTI PERIDOT near Buoys Nos. 89 and 90 in the Houston Ship Channel, Upper Galveston Bay, southeast of Morgan's Point, Texas.  On information and belief, the CONTI PERIDOT's bow struck the CARLA MAERSK's port side, penetrating two port wing ballast tanks and the No. 4 Port Cargo Tank containing MTBE and causing MTBE to spill into the Houston Ship Channel.

9. As a proximate, contributing and/or concurrent result of the collision and Maersk's conduct and, as presently can be determined, the equivalent quantity at 60 degrees Fahrenheit of 19,247.41 barrels of LPA's cargo of MTBE were lost during the voyage by reason of spillage, leakage, contamination, evaporation, unreasonable retention and/or other means of shortage.

10. On or about March 12, 2015 and as a proximate, contributing and/or concurrent result of the collision, Maersk declared general average and, subsequently, required from LPA and/or its insurer(s) the posting of bonds, guarantees and/or other financial security as a prerequisite to release of LPA's cargo.

11. On information and belief, the collision, LPA's cargo loss, and LPA's damages proximately, contributorily and/or concurrently resulted from Maersk's acts and/or omissions constituting breach of its personal contract of carriage with LPA and/or breach of its express and implied warranties set forth therein.

12. Alternatively, and without waiving the foregoing averments, on information and belief, the collision, LPA's cargo loss, and LPA's damages proximately, contributorily and/or concurrently resulted because the M/T CARLA MAERSK was not fit for the service in which she was engaged, was not well equipped for the voyage, was not well maintained for the voyage, was not adequately manned with competent, properly trained and/or instructed officers and crew before the start of the voyage, and because Maersk failed and/or refused to exercise due diligence in making the CARLA MAERSK ready for her voyage and/or otherwise seaworthy.

13. At all times material, LPA performed all of its obligations under its agreement with Maersk or Maersk Tankers Singapore Pte. Ltd. and Bill of Lading No. FMC 020396F.  At no time did any of LPA's acts or omissions cause or contribute to cause the loss of the cargo or LPA's proximately, contributorily and/or concurrently resulting damages. All conditions precedent have been performed or have occurred for LPA to bring this Claim and demand payment by Maersk of all damages.

14. LPA cannot more specifically allege Maersk's conduct constituting failure and/or refusal to exercise due diligence in making the M/T CARLA MAERSK ready for her voyage and/or otherwise seaworthy.  LPA invokes and relies upon the doctrine of *res ipsa loquitur* because the character of the loss was such that it would not have happened in the absence of such conduct and, on information and belief,

each such instrumentality causing the collision and LPA's loss and damages was exclusively within Maersk's control. LPA reserves the right to amend and/or supplement this Original Claim as additional facts are revealed through investigation and discovery.

15. By reason of the premises and as presently can be determined, the Court should adjudge that Maersk is liable to indemnify and/or otherwise pay LPA and its insurer(s) at interest for all costs and expenses in general average which may be assessed against LPA and its insurer(s) at interest, as well as for all reasonable and necessary damages that it proximately, contributorily and/or concurrently has sustained or will sustain including, but not limited to: (a) additional freight, (b) the loss, damage and/or delay to the cargo, (c) contractual penalties assessed and/or incurred, (d) additional demurrage assessed at load, interim and discharge ports, (e) inspection, survey and loss control expenditures, (f) costs of salvage services, (g) port, cargo storage and lightering costs, (h) terminal and dock fees, (i) standby tug expenses, (j) vessel repair expenditures imposed, (k) necessary costs reasonably incurred in making balancing or compensating transactions to secure and/or protect against the cargo loss, (l) administrative costs, (m) incidental expenses and (n) attorney fees and legal costs to the extent allowed under the applicable contract of carriage.

16. By reason of the premises and as presently can be determined, LPA proximately has sustained damages exceeding $9,351,326.75 plus interest dating

from March 9, 2015, demand for which has been made upon Maersk and the M/T CARLA MAERSK, but which they refuse to pay.

17. LPA brings this action for itself and, as necessary, as representative, agent and/or trustee for every person or entity, including each general average insurer, and each insurer which otherwise is or may become interested in the cargo.

WHEREFORE, PREMISES CONSIDERED, Respondent and Claimant, LUKOIL Pan Americas, LLC prays that Maersk Tankers AS, in *personam*, is liable to LUKOIL Pan Americas, LLC for all damages alleged herein, pre–judgment interest, post–judgment interest, court costs and all other relief as justice and equity allow.

Respectfully submitted,

*SHARPE & OLIVER, L.L.P.*

By  _____

Robert C. Oliver
State Bar No. 15255700
S. D. Texas No. 886
5535 Memorial Drive, Suite F570
Houston, Texas 77007
Telephone:    (713) 864–2221
Facsimile:    (713) 864–2228

OF COUNSEL:

R. M. Sharpe, Jr.
State Bar No. 18129000
S. D. Texas No. 889

          ATTORNEYS FOR RESPONDENT AND CLAIMANT, LUKOIL PAN AMERICAS, LLC

## Certificate of Service

I served this Original Claim upon the parties that have appeared by their respective counsel of record by CM/ECF on September 3, 2015.

_Robert C. Oliver_ (signature)

Robert C. Oliver