IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT § | | |
| OF MAERSK TANKERS AS, AS OWNER § | | |
| AND OPERATOR OF THE M/T CARLA § | C.A. NO. 3:15-cv-00106 | |
| MAERSK FOR EXONERATION § | | |
| FROM OR LIMITATION OF LIABILITY § | (ADMIRALTY) | |
| § | | |

**LIMITATION PETITIONER'S MOTION AND MEMORANDUM FOR SUMMARY JUDGMENT AGAINST ECONOMIC DAMAGE CLAIMANTS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Maersk Tankers AS (hereinafter referred to as "Limitation Petitioner") and files this Motion and Memorandum for Summary Judgment against Economic Damage Claimants in this action for exoneration from and/or limitation of liability. Limitation Petitioner would respectfully show the following:

**I.   INTRODUCTION**

On or about March 9, 2015, while the M/T CARLA MAERSK was sailing outbound through the Houston Ship Channel, it met the M/V CONTI PERIDOT in a passing situation as the CONTI PERIDOT was traveling inbound the Houston Ship Channel. At approximately 12:30 p.m. on March 9, 2015, the CONTI PERIDOT caused itself to collide with the CARLA MAERSK at approximately the Morgan's Point peninsula. As a result of the collision the CARLA MAERSK suffered extensive damage to its hull and equipment, including breaching multiple cargo tanks.

At the time of the collision the CARLA MAERSK was carrying 216,049 barrels (bbls) of MTBE. As a result of the collision and the resulting breach of the holding cargo tanks of

the CARLA MAERSK an amount of MTBE was discharged into the Houston Ship Channel resulting in the closure of the Houston Ship Channel for approximately three day.

On May 8, 2015, Maersk Tankers initiated the underlying litigation under the Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.*, in which over 4,000 claimants have filed claims. Limitation Petitioner moves for summary judgment dismissing the claims filed by the following as these claims are not recoverable under the *Robins Dry Dock/TESTBANK* doctrine:

1. *Mac Metals Sales PA, Inc.* (hereinafter "Mac Metal"), *see* Dkt. Nos. 10 and 11;

2. *Magellan Midstream Partners, L.P.*, *Magellan Terminal Holdings, L.P.*, and *Magellan Pipeline Company, L.P.* (hereinafter jointly referred to as "Magellan"), *see* Dkt. No. 52; and,

3. *Travelers Indemnity Company* (herein "Travelers") and *Catlin Insurance Company, Inc.* (hereinafter "Catlin"), *see* Dkt. No. 55.

As alleged, Claimant Mac Metal was the owner of "365 coils of pre-painted aluminum zinc-coated steel sheets, moving under Bill of Lading SKSMCSNL00090000, dated January 8, 2015, and 24 coils of pre-painted aluminum zinc-coated steel sheets, moving under Bill of Lading SKSMCSNL00091000, dated January 7, 2015 (collectively, "the Cargo"), carried on board the MV CONTI PERIDOT from Changshu, Jiangsu Province, China, to New Orleans, Louisiana." Dkt. Nos 10 and 11, ¶ 2. Mac Metals makes no claim from physical loss to these coils, *see* Dkt. Nos. 10 and 11; but instead, Mac Metals' sole claim is for economic losses relating to "the posting of bonds, guarantees, and security against the release of cargoes" as a result of the CONTI PERIDOT declaring General Average. *Id.* at ¶¶ 6, 7, and 9.

At all times relevant to this case, Claimant Magellan was the owner and operator of a petroleum terminal along the Houston Ship Channel, located at 12901 American Petroleum Road, Galena Park, Texas. Dkt. No. 52, ¶ 2. Magellan does not claim physical loss to any

proprietary interest; but instead, seeks to recover solely "loss of income because of the inability to load ships and barges during the channel's closure". *See id.* at ¶ 5.

As alleged, Claimant Travelers was the insurer of 14 steel coils moving under the Bill of Lading SKSMSAA00103000, aboard the CONTI PERIDOT with an invoice amount of $78,668.00. Dkt. No. 55, ¶ 8. As alleged, Claimant Catlin was the insurer of 2 steel coils moving under the Bill of Lading SKSMCSNL00096000, aboard the CONTI PERIDOT with an invoice amount of $27,414.05. Neither Travelers nor Catlin claims that the cargo insured by them suffered any physical damage; but instead, their sole claim is for economic "damages ... including but not limited to general average contributions by Claimants". *See* Dkt. No. 55, ¶¶ 16, 29, 30, and 32.

## II. STATEMENT OF THE ISSUES

Since Claimants Mac Metal, Magellan and Travelers and Catlin have not suffered a physical loss to a proprietary interest their claims for purely economic losses are not recoverable. *See Louisiana ex. Rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1023 (5th Cir. 1985), *en banc*. Specifically, Limitation Petitioner moves to dismiss the claims made by the Claimants listed above under the *Robins Dry Dock/TESTBANK* doctrine where economic losses are not recoverable absent evidence of a physical loss to a proprietary interest.

## III. STANDARD OF REVIEW

A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to a material fact, and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed.R.Civ.P. 56(c)). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to

the non-moving party to produce evidence of the existence of a genuine issue for trial. *Id.* at 322.

## IV. SUMMARY OF ARGUMENT

The facts and law relevant to Limitation Petitioner's Motion for Summary Judgment are clear and undisputed. Claimants Mac Metal, Magellan and Travelers and Catlin are solely seeking to recover for their alleged economic damages. None of them claim that they have suffered a physical loss to any proprietary interest. The law in this Circuit is clear and with no applicable exception. Under the *Robins Dry Dock/TESTBANK* doctrine a claimant must prove that economic losses are associated with some physical damage to a proprietary interest of the claimant. *See Louisiana ex. Rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1022 (5th Cir. 1985), *en banc*. Furthermore, the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. 9601, *et seq*), does not allow for the economic damages claimed by the Claimants. Therefore, Limitation Petitioner moves to dismiss the claims made by Mac Metal, Dkt. Nos. 10 and 11; Magellan, Dkt. No. 52; and Travelers and Catlin, Dkt. No. 55.

## V. ARGUMENT

    **a. Economic losses are not recoverable absent connection to physical damage to a proprietary interest.**

The Fifth Circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit. As made clear in *In re Taira Lynn Marine Ltd. No. 5, LLC*:

> In *Robins Dry Dock & Repair v. Flint,* 275 U.S. 303, 309 (1927), the Supreme Court held that a tortfeasor is not liable for negligence to a third person based on his contract with the injured party. In *Louisiana ex. rel. Guste v. M/V TESTBANK,* 752 F.2d 1019, 1023 (5th Cir. 1985) (en banc), this court concluded that *Robins* is a pragmatic limitation on the doctrine of foreseeability. We reasoned that "[i]f a plaintiff connected to the damaged chattels by contract cannot recover, others more remotely situated are

> foreclosed *a fortiori.*" 752 F.2d at 1024. Accordingly, we reaffirmed the rule that there can be no recovery for economic loss absent physical injury to a proprietary interest. *Id.*

444 F.3d 371, 377 (5th Cir. 2006).

Thus, before a claimant can recover economic damages he must show that he suffered a physical loss or damage to a proprietary interest. Courts consider three factors to determine whether a claimant's interest is proprietary: "actual possession or control, responsibility for repair and responsibility for maintenance." *IMTT–Gretna v. Robert E. Lee SS*, 993 F.2d 1193, 1194 (5th Cir. 1993) (quoting *Tex. Eastern Trans. v. McMoRan Offshore Explor.*, 877 F.2d 1214, 1225 (5th Cir. 1989)). "[A]lthough TESTBANK suggests an association between recovery sought and damage to the plaintiff's property, it left undecided the degree of association required." *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198, 202 (5th Cir. 1995). With this in mind, the Court in *Zapata* concluded that "TESTBANK strongly suggests that recoverable losses somehow be tied to the damage to the plaintiff's property." *Id.* at 203. *Zapata* makes clear that simply pointing to physical damage to *any* proprietary interest will not open the door to recover *all* pure economic losses. *Id.* The Fifth Circuit held as follows:

> Corpus Christi's claimed economic loss was not "attendant" to the physical damage to Corpus Christi's proprietary interest; the loss was instead occasioned only by the physical injury to Houston's riser, property in which Corpus Christi had no proprietary interest. To allow recovery for those losses plainly would abrogate the bright line rule of TESTBANK. To insure that the principles underlying TESTBANK are preserved, *we hold that simply meeting the requirement of showing physical damage to a proprietary interest does not automatically open the door to all foreseeable economic consequences.*

*Zapata*, 71 F.3d at 203 (emphasis added). The court in *Cho–Me Towing* further clarifies the rule:

> The Fifth Circuit's pronouncement in *Nicor Supply Ships Associates v. General Motors*, 876 F.2d 501 (5th Cir. 1989) obviates any argument to the effect that physical damage to any property owned by the plaintiffs is sufficient to satisfy the Robins rule. In *Nicor*, the Fifth Circuit was straightforward in its ruling that to be recoverable, *the economic loss claimed **must flow directly** from the alleged physical damage to plaintiff's property*....

*Naviera Maersk Espana, S.A. v. Cho-Me Towing, Inc.*, 782 F. Supp. 317, 320-21 (E.D. La. 1992) (emphasis added).

Therefore, the general rule in the Fifth Circuit is that recovery of economic damages is permitted under *Robins Dry Dock/TESTBANK* only where the economic loss results directly from the physical damage itself, for example:

> Clearly, TESTBANK sought to preclude wave upon wave of damages. For example, assuming Corpus Christi were a vertically integrated operation, TESTBANK's bright line rule serves to preclude not only recovery for lost gas sales from the well, but also any damages related to refineries that could not process the gas, or damages related to trucking operations that could not transport the gas or to retail outlets that could not sell the final product.

*Zapata*, 71 F.3d at 203.

The Fifth Circuit has also made clear that there is no "geographic exception" to the rule necessitating physical injury. In *In re Taira Lynn*, the Fifth Circuit reversed a district court's finding that since it was "foreseeable that an allision between a barge and the Louisa swing bridge would disrupt the only means of ingress and egress to Cypremore [sic] Point" and "the claims were confined to a limited geographic region ... [where] Claimants were making commercial use of the bridge, the court endorsed a 'geographic exception' to the rule barring recovery for economic losses absent physical damage". 444 F.3d at 376. The Fifth Circuit held that "[t]here is no geographic exception to the *TESTBANK* rule and there is no exception based on the number of claimants. The *TESTBANK* court expressly rejected the case-by-case approach urged by Claimants, and adopted by the district court in the case at

bar." *Id.* at 378-79; *see also Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1071–72 (5th Cir. 2001) (Fifth Circuit affirmed *TESTBANK*, reversing the district court's ruling that *TESTBANK* "is merely an application of the general requirement that damage be foreseeable to be recoverable in tort," and restated that "physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort.").

As detailed in Section I of this memorandum, Claimants Mac Metal, Magellan and Travelers and Catlin do not allege that they suffered physical injury to a proprietary interest, but rather economic damages that are remote to the collision between the CARLA MAERSK and CONTI PERIDOT and the subsequent spill of MTBE. Since they have not suffered a physical loss to a proprietary interest, their claims for purely economic losses are not recoverable. Dkt. Nos. 10, 11, 52 and 55 should be dismissed.

  b. **Claims are not exempt from *Robins Dry Dock* by OPA 1990**

In 1990 the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701, *et seq*, was passed. The Act established strict liability for removal costs and damages for parties responsible for the discharge of oil into or upon navigable waters. *Id.* at § 2702(a). The Act's damages provision preempts general maritime law. Pursuant to OPA, responsible parties are strictly liable for the discharge of oil:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that result from such incident.

33 U.S.C. § 2702(a).

OPA specifies the damages recoverable under the statute. Specifically, section 2702(b)(2)(E) allows for "damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant." Under OPA, a claimant need not prove physical damage to a proprietary interest in order to recover for strictly economic losses suffered as a result of a discharge of oil. *See In re Settoon Towing LLC*, 2009 WL 4730969, at *4 (E.D. La. Dec. 4, 2009).

Liability under OPA is predicated, however, on the discharge of "oil". 33 U.S.C. § 2702(a). OPA defines "oil" as "oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil, but does not include any substance which is specifically listed or designated under subparagraphs (A) through (F) of section 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. 9601) and which is subject to the provisions of that Act". *Id.* at § 2701(23). In other words, substances that fall under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") are excluded from coverage under OPA.

MTBE, the product being carried onboard the CARLA MAERSK at the time of the collision, is considered a substance under CERCLA. *See* 40 C.F.R. § 302.4. Therefore, as a spill of MTBE is subject to the provisions of CERCLA rather than OPA, OPA's preemption of general maritime law, including the *Robins Dry Dock* doctrine, is not applicable to this case and does not allow recovery of economic loss without physical damage to a proprietary interest.

### c. CERCLA does not allow for recovery sought by Claimants

"In enacting CERCLA, Congress intended 'to facilitate the prompt cleanup of hazardous waste sites and to shift the cost of environmental response from the taxpayers to the parties who benefited from the wastes that caused the harm.'" *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 364 (5th Cir. 2005) (quoting *OHM Remediation Servs. v. Evans Cooperage Co.*, 116 F.3d 1574, 1578 (5th Cir. 1997)). CERCLA provides a remedy to a claimant seeking to recover response costs for removal and remediation of designated substances released into the environment. 42 U.S.C. §§ 9601, *et seq*. "To establish a prima facie case of liability under CERCLA, a plaintiff must prove: (1) that the site in question is a "facility" as defined in § 9601(9); (2) that the defendant is a responsible person under § 9607(a); (3) that a release or threatened release of a hazardous substance has occurred; and (4) that the release or threatened release has caused the plaintiff to incur response costs." *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 381 (5th Cir. 2006) (citing *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 668 (5th Cir. 1989)). Therefore, the private causes of action under CERCLA are limited to response costs related to the release of the designated substances. "Response costs are generally and specifically defined to include a variety of actions designed to protect the public health or the environment." *Amoco Oil*, 889 F.2d at 669.

As indicated above, MTBE, the cargo spilled by the CARLA MAERSK as a result of the collision, is considered a substance under the CERCLA. *See* 40 C.F.R. § 302.4. In this case, Claimants Mac Metal, *see* Dkt. Nos. 10 and 11; Magellan, *see* Dkt. No. 52; and Travelers and Catlin, *see* Dkt. No. 55, have not raised a genuine issue of material fact as to whether they are entitled to recover under CERCLA. "To justifiably incur response costs [under CERCLA], one necessarily must have acted to contain a release threatening the public

health or the environment." *Amoco Oil*, 889 F.2d at 669-70.  Here, the Claimants did not incur any response costs recognized by CERCLA because they did not act to remove contamination of the MTBE or remedy the direct effect of any alleged contamination of the MTBE spilled by the CARLA MAERSK.  The claims at issue here, Dkt. Nos. 10, 11, 52, and 55, are strictly for economic losses unrelated to any spill cleanup or alleged damage to any facilities.  None of the Claimants have even alleged that they incurred costs in acting to contain the MTBE; therefore, none of the Claimants are entitled to recover under CERCLA.

## VI.   CONCLUSION

Because Claimants Mac Metal, *see* Dkt. Nos. 10 and 11; Magellan, *see* Dkt. No. 52; and Travelers and Catlin, *see* Dkt. No. 55, cannot point to any evidence that they have suffered a physical loss to a proprietary interest they cannot recover for their alleged economic damages.  The law is clear and the facts are undisputed.  As there is no genuine issue of material fact Limitation Petitioner is entitled to judgment as a matter of law as to economic loss claims against it by Claimants Mac Metal, Travelers, Catlin, and Magellan.  Pursuant to the *Robins Dry Dock/TESTBANK* doctrine, Dkt. Nos. 10, 11, 52, and 55, should be dismissed.

**WHEREFORE, PREMISES CONSIDERED**, it is respectfully requested that Maersk Tankers AS' Motion for Summary Judgment of the Economic Damage Claimants as requested herein be granted and that Dkt. Nos. 10, 11, 52, and 55 be dismissed.

Respectfully submitted,

William A. Durham
State Bar No. 06281800
S.D.TX. Adm. ID No. 4172
Robert L. Klawetter
State Bar No. 11554700
S.D.TX. Adm. ID No. 2471

                      Christina K. Schovajsa
                      State Bar No. 24002910
                      S.D.TX. Adm. ID No. 25142
                      The Niels Esperson Building
                      808 Travis, Suite 1300
                      Houston, TX 77002
                      (713) 225-0905 – Telephone
                      (713) 225-2907 – Facsimile

                      *Attorneys for Petitioner*
                      *Maersk Tankers AS*

OF COUNSEL:

EASTHAM, WATSON, DALE & FORNEY, L.L.P.

## CERTIFICATE OF SERVICE

    I certify that I filed the foregoing pleading on April 27, 2016, electronically, and that a true and correct copy of the foregoing will be served on counsel of record via the Electronic Case Filing System of the United States District Court for the Southern District of Texas, Galveston Division.

                                          _____
                                          William A. Durham